654 So.2d 895 (1995)
Roger HEIGLE
v.
JoAnn HEIGLE.
No. 93-CA-00016-SCT.
Supreme Court of Mississippi.
April 20, 1995.
*896 Robert S. Murphree, Jackson, for appellant.
H.L. Merideth, Jr., Greenville, for appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
HAWKINS, Chief Justice, for the Court:
JoAnn Heigle filed a petition for divorce against her husband, Roger Heigle, in the chancery court of Issaquena County on April 24, 1990. Thereafter, JoAnn filed an amended complaint which joined Roger's parents and two partnerships of which Roger was a member.
Due to bankruptcy proceedings against a number of the defendants, the court ordered a bifurcated trial, with an initial hearing to resolve the dispute between Roger and JoAnn, and a later trial of the remaining matters. The issues involving Roger and JoAnn were tried on November 16 and 17, 1992. At the conclusion of the proceedings, the chancellor issued a bench ruling which found:
1. JoAnn entitled to a divorce on grounds of adultery;
2. JoAnn should receive a marital distribution and/or lump sum alimony, the amount to be determined after the conclusion of the bankruptcy proceedings;
3. Roger should return $6,000 to JoAnn which she inherited from her mother;
4. JoAnn was not entitled to periodic alimony; and
5. JoAnn might be entitled to attorney fees depending upon Roger's solvency.
Although reserving the right to determine the amounts of the marital distribution and/or lump sum alimony and attorney fees to which JoAnn was entitled, the chancellor stated that his ruling was a final judgment from which either party might appeal.
In light of the chancellor's ruling, Roger has perfected his appeal to this Court arguing that the lower court erred by finding that JoAnn was entitled to a marital distribution and/or lump sum alimony, that he should repay $6,000 to JoAnn, and that she might be entitled to attorney fees. JoAnn has cross-appealed arguing that the chancellor should have retained jurisdiction over the periodic alimony issue pending the completion of the bankruptcy proceedings. We vacate both appeals and remand.

FACTS
Roger and JoAnn were married in May of 1962. Five children were born of their marriage, and the surviving children were over the age of majority or emancipated at the time of suit.
Shortly after their marriage, Roger began farming. Along with his father, brother and brother-in-law, Roger was an equal partner in Heigle Farms.[1] The partnership owned *897 approximately 6,000 acres in Hinds County, and rented 5,000 acres from Roger's father in Issaquena County. At the time of trial, the Hinds County property was subject to a debt of $6,000,000, which the partnership had been unable to service during the previous three years. As a partner, Roger withdrew $1,500 per month from the partnership account. Other than his partnership interest, Roger's only significant asset was a one-quarter share in approximately 120 acres in and around Mayersville, which was collateral on a farm loan.
In 1978 JoAnn inherited $10,000 from her mother, which the couple used to open a bank account. Thereafter, the money was used to purchase a number of cattle, and for other family expenses. After the separation, Roger sold the cattle they still owned to his father. JoAnn received $4,000 from this sale.
The marital residence, in which Roger was living at the time of trial, was located on land owned by Roger's father, L.M. Heigle. Although the elder Heigle built the residence, there was some question as to whether or not he had been repaid by the partnership for the expense. With the exception of food and the telephone bill, all the household expenses were paid by the partnership. Roger's monthly expenses were approximately $1,300. He stipulated that he had committed adultery after the separation.
Throughout the course of their marriage, JoAnn worked outside the home in order to support the family, and was primarily responsible for the care of the children and the home. She also served as bookkeeper for the partnership for a number of years, and was at least partially compensated for her services. In 1983 JoAnn went to work with the Issaquena County Tax Assessor's Office. At the time of trial, she was serving as both county tax assessor and tax collector, receiving a monthly salary of $2,559.00.
After the couple's separation, JoAnn had difficulty finding another place to live. Ultimately, she found a house where she was allowed to live rent free, provided that she make various repairs to the home and pay certain utilities. She testified at trial that she had spent $4,500 on repairs and appliances. According to JoAnn's financial statement, her monthly expenses totalled $2,063.37 per month, at least some of which were attributable to the couple's daughter who had lived with JoAnn until her subsequent marriage.
Prior to the hearing on this matter, Roger's parents  the owners of the Issaquena tract farmed by the partnership  and the partnership itself filed for bankruptcy. Roger's principal asset was his partnership interest. At the time of the hearing, the bankruptcy proceedings had not been concluded.
At trial Arthur Miller, president of the Bank of Anguilla, testified about Roger's and the partnership's financial status. According to Miller, Roger and the partnership had enormous liabilities.

LAW

I. Nonmarital Property
In his bench ruling, the chancellor ordered Roger to pay JoAnn the sum of $10,000, but reduced that amount in light of the fact that Roger had already paid JoAnn $4,000 from the sale of the remaining cattle. Although he failed to make specific findings with respect to this issue, his ruling stemmed from the $10,000 inheritance that JoAnn received after her mother's death in 1978.
In light of our recent decision in Johnson v. Johnson, 650 So.2d 1281, 1286 (1994), the chancellor's decision must be reversed. In Johnson, we found that nonmarital assets (e.g. inherited property) may be converted to marital assets if they are commingled with marital assets or used for familial purposes. Such converted assets are then subject to equitable distribution. In the instant case, the $10,000 which JoAnn inherited was placed in an account which the couple used to purchase cattle, and to pay other family expenses. Consequently, these funds lost their status as nonmarital property, were converted to marital property, and should have been treated as such. However, under Johnson, the $4,000.00 which Roger paid *898 JoAnn after he sold the remaining cattle to his father regained its nonmarital status, and should not be subject to equitable distribution.

II. Marital Distribution or Lump Sum Alimony
In his bench ruling the chancellor found that JoAnn was entitled to a marital distribution and/or lump sum alimony. However, he was unable to set amounts on either due to the fact that Heigle Farms, Roger's principal asset, was in bankruptcy. The chancellor's finding was erroneous.
In the case of property settlement and lump sum alimony, the court's decision must hinge on the value of the marital estate, or the spouses' separate estates. Ferguson v. Ferguson, 639 So.2d 921, 928-29 (Miss. 1994); Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss. 1988). In Ferguson, the Court stated: "Property division should be based upon a determination of the fair market value of the assets, and these valuations should be the initial step before determining division." 639 So.2d at 929.
In the instant case, that information was not before the court when it made its determination due to the bankruptcy proceedings involving Heigle Farms. The value of Roger's partnership interest could be several thousand dollars, or it might be totally worthless. That being the case, the court's decision to grant JoAnn a property settlement and/or lump sum alimony was premature, and we reverse on this issue.

III. Attorney Fees
JoAnn's attorney fees were in excess of $9,300. When making a determination on the issue of attorney fees, we have stated that the paramount consideration is the spouse's ability to pay, although other factors may be considered by the chancellor. Daigle v. Daigle, 626 So.2d 140, 147 (Miss. 1993). Under the facts of this case, any decision on JoAnn's entitlement to attorney fees was premature.

IV. Periodic Alimony
At trial, the court found that periodic alimony was not warranted in light of JoAnn's regular salary of $2,559 per month. Generally, a wife is entitled to periodic alimony when her income is insufficient to maintain her standard of living, and the husband is capable of paying. Rainer v. Rainer, 393 So.2d 475, 478 (Miss. 1981). Consequently, the chancellor's determination that JoAnn was not entitled to periodic alimony was also premature.
In view of the fact that there was no dispute that JoAnn was entitled to a divorce, all the remaining issues should have remained in the trial court pending the conclusion of the bankruptcy proceedings. Under Miss.R.Civ.Proc. 54(b), an appeal is permitted of one issue on which there has been a final judgment, even though other issues remain. In Cox v. Howard, Weil, Labouisse, Friedrichs, Inc., 512 So.2d 897, 900 (Miss. 1987), we held that such an appeal should be carefully circumscribed. We therefore vacate the appeal and remand for proceedings consistent herewith.
DIRECT APPEAL AND CROSS-APPEAL VACATED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
DAN M. LEE, and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
NOTES
[1] Prior to 1991, the farmers also operated Wilderness Farms, another partnership. However, Wilderness Farms apparently merged with Heigle Farms, which in turn assumed the liabilities of Wilderness Farms.