## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1999-CA-00007-SCT

*ROGER HEIGLE*

*v.*

*JO ANN HEIGLE (SIMMONS)*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/29/1998 |
| TRIAL JUDGE: | HON. WILLIAM L. GRIFFIN, JR. |
| COURT FROM WHICH APPEALED: | ISSAQUENA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROBERT S. MURPHREE |
| ATTORNEY FOR APPELLEE: | JOHN H. DANIELS, III |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 11/2/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/27/2000 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE AND MATERIAL FACTS

¶1. Roger Heigle ("Roger") and Jo Ann Heigle ("Jo Ann") were granted a divorce on December 1, 1992. Roger appealed the chancellor's order to this Court on December 28, 1992. This Court vacated the judgment on both the appeal and cross-appeal and remanded with instructions to the lower court that all issues, other than the issue of the granting of the divorce, should be stayed until the conclusion of the bankruptcy proceedings. *Heigle v. Heigle*, 654 So.2d 895, 898 (Miss. 1995)("*Heigle I*").

¶2. Jo Ann moved for summary judgment on October 6, 1997. The trial court partially granted Jo Ann's motion, ruling that as a matter of law and fact, Jo Ann was entitled to equitable distribution of the marital assets.

¶3. In January, 1998, Jo Ann filed a motion with the trial court, asking that an expert be appointed to appraise the marital estate as of 1992. Roger opposed the motion and stated that his counsel could not be present for the hearing on the matter. Regardless, the court heard the motion without the presence of Roger's counsel. At the hearing, the court appointed an expert, a local accountant, to value the marital estate.

¶4. The expert failed to have the required report ready for court until December of 1998. Roger's counsel repeatedly tried to contact the expert to obtain a copy of his report, only to be told by the expert that he would have to talk to the chancellor before giving Roger's counsel any information.

¶5. Trial on this matter was held on December 17, 1998. At this time, the bankruptcy regarding Heigle Farms had been settled. The chancellor issued a bench ruling where he valued Heigle Farms at $900,000, of which $225,000 constituted Roger's interest. The chancellor then placed a $14,000 value on a life insurance policy owned by Roger and valued the marital residence at $48,150. Jo Ann was awarded 40% of the marital estate or $114,860. The chancellor went through a series of credits and debits to arrive at a final figure of $115,060. Roger was ordered to pay $10,000 of Jo Ann's attorney's fees as well as $3,000 in expert fees.

¶6. The chancellor set a supersedeas appeal bond for three times the judgment amount, in direct contravention to M.R.A.P. 8, which calls for a supersedeas appeal bond of 125% of the judgment. Roger filed a motion with this Court to reverse the chancellor's order requiring the exorbitant bond. Such order was granted by this Court. On remand, the chancellor then set the bond at 125%. Roger then appealed the final judgment to this Court.

## STATEMENT OF ISSUES

**I. WHETHER THE LOWER COURT ERRED IN GRANTING JOANN'S MOTION FOR SUMMARY JUDGMENT REGARDING EQUITABLE DISTRIBUTION AND RULING JOANN WAS ENTITLED TO EQUITABLE DISTRIBUTION PRIOR TO THE TRIAL OF THE MATTER.**

**II. WHETHER THE RULING ISSUED BY THE LOWER COURT HAS SUFFICIENT FACTUAL SUPPORT AND DEVELOPMENT TO ALLOW THIS COURT TO CONDUCT A MEANINGFUL APPELLATE REVIEW OF THE BASIS FOR THE LOWER COURT'S RULING IN LIGHT OF THE LOWER COURT'S FAILURE TO DISCUSS THE FERGUSON FACTORS.**

**III. WHETHER THE LOWER COURT ERRED IN APPOINTING A COURT APPOINTED EXPERT TO PREPARE VALUATIONS IN THIS MATTER.**

**IV. WHETHER THE COURT ERRED IN VALUING THE MARITAL ESTATE AS OF 1998 INSTEAD OF THE TIME OF THE DIVORCE IN 1992.**

**V. WHETHER THE LOWER COURT ERRED IN EXCLUDING PARTNERSHIP LIABILITIES ON NOTES SIGNED BOTH BY THE PARTNERSHIP AND ROGER IN DETERMINING THE VALUE OF THE PARTNERSHIP AND ROGER'S LIABILITIES.**

**VI. WHETHER THE LOWER COURT ERRED IN THE WAY IT HANDLED ALL THE ISSUES INVOLVING THE HOUSE THE PARTIES LIVED IN DURING THEIR MARRIAGE.**

**VII. WHETHER THE LOWER COURT ERRED IN MAKING ROGER PAY PART OF JOANN'S ATTORNEYS FEES AS WELL AS THE EXPERT FEES.**

**VIII. WHETHER THE LOWER COURT ERRED IN REQUIRING THE ATTORNEY FOR ROGER TO TESTIFY AS A WITNESS FOR JOANN.**

**IX. WHETHER THE LOWER COURT ERRED IN RELYING UPON ITS OWN**

**PERSONAL EXPERIENCE AND MATTERS NOT IN THE RECORD IN ITS RULING.**

**X. WHETHER THE LOWER COURT'S TREATMENT OF ROGER EVIDENCES BIAS AND PREJUDICE.**

**XI. WHETHER THE AWARD MADE BY THE LOWER COURT IS EQUITABLE AND JUST GIVEN THE FACTS AND CIRCUMSTANCES OF THE CASE, INCLUDING ROGER'S FINANCIAL CONDITION.**

**XII. WHETHER THE LOWER COURT ERRED IN NOT TAKING INTO ACCOUNT ROGER'S INABILITY TO PAY IN MAKING THE RULING OF DECEMBER 17, 1998, THAT FORMED THE BASIS FOR THE JUDGMENT APPEALED FROM AND WHETHER THE EVIDENTIARY BASIS FOR THE EQUITABLE DISTRIBUTION ORDERED WAS PROVED BY THE PLAINTIFF.**

**XIII. WHETHER THE LOWER COURT WAS CONSISTENT IN THE APPLICATION OF ITS CREDITS AND DEBITS TO THE MARITAL ESTATE IN COMING UP WITH THE FINAL FIGURE AWARDED TO JOANN.**

## STANDARD OF REVIEW

¶7. The standard of review in domestic relations cases is well-settled:

Our scope of review in domestic relations matters is limited by our familiar substantial evidence/manifest error rule. Stevison v. Woods, 560 So.2d 176, 180 (Miss.1990). "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990). See also Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994); Faries v. Faries, 607 So.2d 1204, 1208 (Miss.1992). In other words, "[o]n appeal [we are] required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." Newsom v. Newsom, )557 So.2d 511, 514 (Miss.1990). See also Dillon v. Dillon, 498 So.2d 328, 329 (Miss.1986). This is particularly true in the areas of divorce, alimony and child support. Tilley v. Tilley, 610 So.2d 348, 351 (Miss.1992); Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989). The word "manifest," as defined in this context, means "unmistakable, clear, plain, or indisputable." Black's Law Dictionary 963 (6th ed.1990). Turpin v. Turpin, 699 So.2d 560, 564 (Miss.1997) (quoting Magee v. Magee, 661 So.2d 1117, 1122 (Miss.1995)).

*Clark v. Clark*, 754 So.2d 450, 458 (Miss. 1999).

## DISCUSSION

**I. WHETHER THE LOWER COURT ERRED IN GRANTING JOANN'S MOTION FOR SUMMARY JUDGMENT REGARDING EQUITABLE DISTRIBUTION AND RULING JOANN WAS ENTITLED TO EQUITABLE DISTRIBUTION PRIOR TO THE TRIAL OF THE MATTER.**

¶8. This Court's standard of review of a trial court's grant of summary judgment is well established:

Our appellate standard for reviewing the grant or denial of summary judgment is the same standard as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure. This Court employs a de novo standard of review of a lower court's grant or denial of summary judgment and examines all the evidentiary matters before it-- admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant should be given the benefit of the doubt. McCullough v. Cook, 679 So.2d 627, 630 (Miss.1996) (quoting Mantachie Natural Gas Dist. v. Mississippi Valley Gas Co., 594 So.2d 1170, 1172 (Miss.1992); Clark v. Moore Mem'l United Methodist Church, 538 So.2d 760, 762 (Miss.1989)).

*Mississippi Dep't of Wildlife, Fisheries & Parks v. Mississippi Wildlife Enforcement Officers' Ass'n, Inc.,* 740 So.2d 925, 929-30 (Miss. 1999).

¶9. In October, 1997, approximately two and one-half years after this Court's earlier ruling in *Heigle I*, Jo Ann moved for summary judgment asking the chancery court to rule that she was "entitled to an equitable division of the assets accumulated during the time of the marriage between the parties." Jo Ann filed no additional documents in support of her motion. The chancery court granted Jo Ann's motion, stating that "Jo Ann Heigle is entitled to an equitable division of the assets accumulated during the time of the marriage between the parties."

¶10. Roger strenuously objected to Jo Ann's motion, noting that "the earlier ruling of this Court granting an equitable division of the parties' property has been reversed by the Supreme Court, and the plaintiff now asks the Court to make the same determination prematurely that has already been reversed once."

¶11. In *Heigle I*, this Court held the chancellor in error when he found Jo Ann was entitled to an equitable distribution of the marital estate when the chancellor was unable to value the estate due to bankruptcy. *Heigle I*, 654 So.2d at 898. This Court stated:

In the case of property settlement and lump sum alimony, the court's decision must hinge on the value of the marital estate, or the spouses' separate estates. *Ferguson v. Ferguson*, 639 So.2d 921, 928-29 (Miss. 1994); *Cheatham v. Cheatham*, 537 So.2d 435, 438 (Miss. 1988). In Ferguson, the Court stated: "Property division should be based upon a determination of the fair market value of the assets, and these valuations should be the initial step before determining division." 639 So.2d at 929.

In the instant case, that information was not before the court when it made its determination due to the bankruptcy proceedings involving Heigle Farms. The value of Roger's partnership interest could be several thousand dollars, or it might be totally worthless. That being the case, the court's decision to grant JoAnn a property settlement and/or lump sum alimony was premature, and we reverse on this issue.

654 So.2d at 898.

¶12. The facts that were before the chancellor in *Heigle I* were the same facts before the chancellor on remand. Neither JoAnn nor Roger had filed any further evidence with the court that would serve to support or negate JoAnn's motion for summary judgment. A review of the transcript of the hearing regarding the motion for summary judgment gives no indication that any new information had been provided the court to help determine the value of the marital estate. The marital estate had not been assigned a value at the time summary judgment was granted as was required by this Court in *Heigle I.* There was no assigned value at the time of the summary judgment in favor of Jo Ann in 1997.

¶13. The 1997 granting of a summary judgment announcing or awarding equitable distribution is no more than announcing that the chancellor intended to follow the precedent established by this Court in *Ferguson*. *Ferguson v. Ferguson*, 693 So.2d 921 (Miss. 1994). The trial court's granting of a summary judgment in its November 1997 order without assigning any value to the marital estate and without any division of such an estate was a redundant statement of what the law is and did not in any way change the status of the parties and did no harm to the parties; indeed both parties are entitled to an equitable distribution of the marital assets.

¶14. The law is clear on this point. As this Court stated in *Ferguson*, "[p]roperty division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division." *Id.* at 929. According to *Ferguson*, the estate must have a value placed upon it before the chancellor can determine what is an equitable distribution. The chancellor did not place a value on the marital estate when he awarded Jo Ann 40% of the marital estate. In 1997 the chancellor did not evaluate the estate, he merely announced that Jo Ann was entitled to an equitable distribution without deciding what that distribution was.

¶15. Therefore, no harm, no foul, no division of estate, and no reversal on this issue.

> **II. WHETHER THE RULING ISSUED BY THE LOWER COURT HAS SUFFICIENT FACTUAL SUPPORT AND DEVELOPMENT TO ALLOW THIS COURT TO CONDUCT A MEANINGFUL APPELLATE REVIEW OF THE BASIS FOR THE LOWER COURT'S RULING IN LIGHT OF THE LOWER COURT'S FAILURE TO DISCUSS THE *FERGUSON* FACTORS.**

¶16. Roger argues that the chancellor committed manifest error in failing to make a record of the findings of fact and conclusions of law regarding the equitable distribution of the marital estate. Jo Ann, however, argues that because the chancellor mentioned that he considered the *Ferguson* factors in his bench ruling, that is sufficient for this Court to perform a review. After careful inspection of the record before us, this Court concludes that the chancellor committed manifest error in failing to make the required record of the findings of fact and conclusions of law regarding the *Ferguson* factors.

¶17. This Court has made it quite clear that chancellors should make findings of fact and conclusions of law regarding equitable distribution of the marital estate part of the record to aid this Court in its review. In *Ferguson*, the seminal case regarding equitable distribution, this Court stated:

> Given the development of domestic relations law, this Court recognizes the need for guidelines to aid chancellors in their adjudication of marital property division. **Therefore, this Court directs the chancery courts to evaluate the division of marital assets by the following guidelines and to support their decisions with findings of fact and conclusions of law for purposes of appellate**

**review.**

*Ferguson,* 639 So.2d at 928 (emphasis added). The Court went on to state in *Ferguson* that "**[t]o aid in appellate review, findings of fact by the chancellor, together with the legal conclusions drawn from those findings, are required**."*Id.* at 929 (emphasis added). The *Ferguson* factors include, but are not limited to:

> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>
> a. Direct or indirect economic contribution to the acquisition of the property;
>
> b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
>
> c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
>
> 2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
>
> 3. The market value and the emotional value of the assets subject to distribution.
>
> 4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
>
> 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
>
> 6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
>
> 7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
>
> 8. Any other factor which in equity should be considered.

*Id.* at 928.

¶18. The chancellor, in his bench ruling, stated that "[i]n making my decisions about the equitable distribution, I have considered all of the factors set forth in **Ferguson**." He went on to state that "the 'equitable division' of a marital estate is left to the sound discretion of the [c]hancellor, keeping in mind, as I said earlier, the **Ferguson** factors." The chancellor made no mention of the *Ferguson* factors in his Final Judgment entered December 30, 1998.

¶19. The chancellor then ruled that Jo Ann was entitled to a 40% interest in the marital estate. The chancellor made no findings of fact or conclusions of law to support this award of 40% of the marital estate or $114,860. He merely recited the mechanics of how he arrived at that number. Such being the case, this

Court has no basis on which to review the chancellor's 40% award to Jo Ann.

¶20. This Court has not hesitated to reverse chancellors w ho fail to apply the *Ferguson* factors and make the requisite findings of fact and conclusions of law as required by this Court. In *Sandlin v. Sandlin*, 699 So.2d 1198 (Miss. 1997), the chancellor, in making the marital property distribution, mentioned the *Ferguson* guidelines and represented that he was applying them to the facts of that case. *Id.* at 1204. However, the chancellor failed to make the requisite findings of fact and conclusions of law as required by *Ferguson*. This Court held that it "could not evaluate the basis that he [the chancellor] used to determine the division of property." *Id.* Finally this Court ruled that "the failure to make findings of fact and conclusions of law was manifest error requiring reversal and remand." *Id.*

¶21. In *Kilpatrick v. Kilpatrick*, 732 So.2d 876 (Miss. 1999), this Court reversed a chancellor for failing to make the required findings of fact and conclusions of law regarding the distribution of the marital estate. *Id.* at 881. While the chancellor did enumerate the actual property division, the chancellor made no conclusions of law to support the division of the marital estate. *Id.* at 878-88. This Court reversed and remanded for specific findings of fact stating that "[w]ithout findings from the Chancellor concerning this income or use of income, we cannot determine if the distribution of property outlined above meets the standards of equitable distribution required by *Ferguson*."*Id.* at 881.

¶22. In the case sub judice, the chancellor, as did the chancellor in *Kilpatrick*, enumerated the actual property division. In this case, as in *Kilpatrick*, the chancellor failed to make any conclusions of law as to the *Ferguso*n factors to support the division of the marital estate. As a result of the chancellor's failure to apply the *Ferguson* factors properly, this Court has no choice but to reverse and remand this action to the trial court.

### III. WHETHER THE LOWER COURT ERRED IN APPOINTING A COURT APPOINTED EXPERT TO PREPARE VALUATIONS IN THIS MATTER.

¶23. Roger next cites the chancellor's appointment of an expert witness as error. Jo Ann filed a motion requesting that the chancellor appoint an expert witness to value the marital estate as of December 31, 1992. Roger opposed the motion, arguing that it would only assist Jo Ann "in proving her case." Roger further opposed the hearing on the motion because counsel for Roger could not be present on the day of the hearing. On the day of the hearing Roger's counsel telephoned the court administrator who informed counsel that the motion was still set to be heard. Roger's counsel asked to participate by phone. The court administrator told counsel that she would call back if the hearing took place. Counsel was not contacted by the court administrator. The chancellor held the hearing on the motion, granted the motion and appointed Donald Tackett and Associates to prepare a valuation of the marital estate.

¶24. In *Bryant v. Horton*, 124 Miss. 1, 86 So. 642 (1921), this Court reversed the trial court for hearing and granting a motion to dismiss without notice to opposing counsel or without giving opposing counsel the opportunity to be heard. This Court stated "[w]e think the proper practice in such a case is to give notice to opposing counsel when action is to be taken by the court, so that he may appear and be heard, or remedy the trouble urged against his case." *Id.* at 643.

¶25. In the case sub judice, Roger's counsel was noticed that the motion was to be heard on February 5, 1998. Counsel immediately notified the court that he could not attend the hearing and asked that it be rescheduled. Counsel received no reply from Jo Ann's counsel or the chancellor. When counsel attempted

to participate in the hearing telephonically, the court administrator never called counsel to advise him of the hearing time as she had promised. In effect, counsel was not noticed because the court administrator failed to notify counsel when the hearing began.

¶26. Furthermore, it is the chancellor's duty and responsibility to make sure that every person who has a legal interest in a proceeding or his counsel is given "full right to be heard according to law...." Code of Judicial Conduct, Canon 3(A)(4). Neither Roger nor his counsel was given any right at all to be heard at this proceeding.

¶27. While we cannot say that the chancellor would not have appointed the expert witness if Roger had attended the hearing, we can say that Roger was possibly harmed by this appointment. The chancellor instructed the expert to value the marital estate as of December 31, 1992. The expert testified that he used a January, 1998, balance sheet to begin his evaluation. Indeed his report stated that he was to determine the marital estate's "current value."

¶28. Because this is a domestic relations case, we will review the decision of the chancellor to appoint an expert under the manifest error, abuse of discretion standard applied in domestic relations cases. *Clark*, 754 So.2d at 458.

¶29. M.R.E. 706 states in pertinent part:

> (a) Appointment. The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. . . .

M.R.E. 706 clearly authorizes the appointment of an expert upon the motion of a party. As the Court of Appeals correctly noted, "[t]he appointment of an expert by the court under Mississippi Rule of Evidence 706 is done sparingly, and then only in exceptional cases involving complex issues where the expert's testimony would be helpful to the trier of facts. M.R.E. 706."*Trilogy Communications, Inc. v. Thomas Truck Lease, Inc.*, 733 So.2d 313, 317 (Miss. Ct. App. 1998).

¶30. The chancellor did not abuse his discretion in appointing an expert. The mechanics of this case are extremely complicated. Involved in this case is the valuation of a partnership that was in bankruptcy at the time of the divorce in 1992. As of 1998, the partnership had ended the bankruptcy and had begun rebuilding the farming operations. The parties had lived in a home allegedly paid for and owned by the partnership. Living expenses for the parties had been paid by the partnership. Because of the complexity of the financial matters in this case, it cannot be said that the chancellor abused his discretion in appointing an expert.

¶31. As stated earlier, though, Roger was possibly harmed by the appointment of the expert witness. Specifically, Roger should have been allowed input on matters such as the date to be used in the valuation and the method of selecting the expert. Upon remand, Roger should be given an opportunity to be heard with regard to the expert witness.

### IV. WHETHER THE COURT ERRED IN VALUING THE MARITAL ESTATE AS OF 1998 INSTEAD OF THE TIME OF THE DIVORCE IN 1992.

¶32. Roger asserts that the chancellor erred in valuing the marital estate as of 1998 instead of 1992, the date of divorce. Jo Ann asserts that the chancellor did value the marital estate as of 1992.

¶33. While Roger cites no authority for this issue, it is necessary for this Court to speak to the issue to give guidance to the Court below and to avoid confusion on remand.

¶34. In the order appointing the expert, the chancellor stated that the valuation was to be made "as of 12/31/92." Upon examination of the report submitted by the expert, it is clear that the estate was valued in 1998 terms.

¶35. The report is dated December 10, 1998. In the first paragraph the expert states that he was "appointed to determine the current value of the marital estate." The report goes on to say that a financial statement dated January 18, 1998, was used in the valuation. The report valued the partners' equity at $901,945.21 with Roger's 25% interest coming to $225,486.30. The marital residence was valued at $48,150, with no supporting documentation. Net cash value of a life insurance policy on Roger's life with Jo Ann as beneficiary was valued at $14,000.

¶36. The chancellor adopted the valuation of the expert. In his bench ruling, the chancellor valued Roger's interest in Heigle Farms at $225,000, the life insurance at $14,000, and the marital estate at $48,150, for a total valuation of $287,150.

¶37. The actions of the chancellor in assigning a value to the marital estate constitute manifest error requiring reversal by this Court. Marital property is defined as "any and all property acquired or accumulated during the marriage." *Hemsley v. Hemsley*, 639 So.2d 909, 915 (Miss. 1994). "Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor." *Id.* Further, "non-marital property is not subject to equitable distribution." *Devore v. Devore*, 725 So.2d 193, 196 (Miss. 1998).

¶38. The chancellor committed manifest error in valuing the property as of 1998. In *Heigle I*, the chancellor could not place a value upon the partnership as of 1992 because the partnership was in bankruptcy. Upon remand, it will be incumbent upon the chancellor to value the partnership at the time the bankruptcy was concluded. This Court is unable to ascertain that date as such information was not provided to this Court.

¶39. Once the marital estate is assigned a post-bankruptcy value, this Court directs that Jo Ann be awarded interest on her equitable share of the marital estate with such interest commencing on the date of the conclusion of the bankruptcy.

### VII. WHETHER THE LOWER COURT ERRED IN MAKING ROGER PAY PART OF JO ANN'S ATTORNEYS FEES AS WELL AS THE EXPERT FEES.

¶40. The chancellor ordered Roger to pay $10,000 of the $15,000 Jo Ann owed in attorney's fees. The chancellor also ordered that Roger pay $3,000 in expert fees. The chancellor then went on to order that the court costs be divided "50/50 between the parties."

¶41. It is an abuse of discretion for a trial court to award costs and attorney fees without a showing that one party is unable to pay the fees in question. *Hankins v. Hankins*, 729 So.2d 1283, 1286 (Miss. 1999). Here, the chancellor did not make any findings that Jo Ann was unable to pay her attorney fees or the

expert fees. Because the chancellor made no findings as required by this Court, we reverse the chancellor's order requiring Roger to pay $10,000 in attorney fees incurred by Jo Ann as well as the $3,000 expert fees. We reverse and remand this issue for consideration by the court upon remand.

**V. WHETHER THE LOWER COURT ERRED IN EXCLUDING PARTNERSHIP LIABILITIES ON NOTES SIGNED BOTH BY THE PARTNERSHIP AND ROGER IN DETERMINING THE VALUE OF THE PARTNERSHIP AND ROGER'S LIABILITIES.**

**VI. WHETHER THE LOWER COURT ERRED IN THE WAY IT HANDLED ALL THE ISSUES INVOLVING THE HOUSE THE PARTIES LIVED IN DURING THEIR MARRIAGE.**

**VIII. WHETHER THE LOWER COURT ERRED IN REQUIRING THE ATTORNEY FOR ROGER TO TESTIFY AS A WITNESS FOR JOANN.**

**IX. WHETHER THE LOWER COURT ERRED IN RELYING UPON ITS OWN PERSONAL EXPERIENCE AND MATTERS NOT IN THE RECORD IN ITS RULING.**

**X. WHETHER THE LOWER COURT'S TREATMENT OF ROGER EVIDENCES BIAS AND PREJUDICE.**

**XI. WHETHER THE AWARD MADE BY THE LOWER COURT IS EQUITABLE AND JUST GIVEN THE FACTS AND CIRCUMSTANCES OF THE CASE, INCLUDING ROGER'S FINANCIAL CONDITION.**

**XII. WHETHER THE LOWER COURT ERRED IN NOT TAKING INTO ACCOUNT ROGER'S INABILITY TO PAY IN MAKING THE RULING OF DECEMBER 17, 1998, THAT FORMED THE BASIS FOR THE JUDGMENT APPEALED FROM AND WHETHER THE EVIDENTIARY BASIS FOR THE EQUITABLE DISTRIBUTION ORDERED WAS PROVED BY THE PLAINTIFF.**

**XIII. WHETHER THE LOWER COURT WAS CONSISTENT IN THE APPLICATION OF ITS CREDITS AND DEBITS TO THE MARITAL ESTATE IN COMING UP WITH THE FINAL FIGURE AWARDED TO JOANN.**

¶42. Because we reverse and remand to the trial court on Issues I, II, III, IV, and VII, we will not address the remaining issues.

<u>CONCLUSION</u>

¶43. This Court holds that the court below erred in failing to make a record as to the findings of fact and conclusions of law regarding his application of the ***Ferguson*** factors in awarding Jo Ann 40% of the marital estate.

¶44. While the chancellor did not err in appointing an expert; the expert, in contravention to the order of the chancellor, valued the marital estate as of 1998 instead of 1992, or at the end of the bankruptcy. This valuation constitutes manifest error.

¶45. The chancellor was also in error when he ordered Roger to pay part of Jo Ann's attorney fees as well

as the expert fees. The chancellor made no finding that Jo Ann was unable to pay those fees, in direct contravention to established law.

¶46. The judgment of the Chancery Court of Issaquena County is reversed, and this case is remanded to that court for further proceedings consistent with this opinion.

¶47. **REVERSED AND REMANDED.**

**PRATHER, C.J., WALLER, COBB AND DIAZ, JJ., CONCUR. SMITH, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. BANKS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J. PRATHER, C.J., JOINS IN PART. MILLS, J., NOT PARTICIPATING.**

BANKS, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶48. I agree that the chancery court's judgment must be reversed and this case remanded for further proceedings to more precisely articulate a consideration of the *Ferguson* factors. I also believe, however, that the chancellor's acceptance of the court-appointed expert's valuation without adequate support for that expert's disregard of certain partnership debts requires reversal. Finally, I disagree with the majority's command that the trial court consider only the value of the marital estate as of the time that the bankruptcy ended for purposes of determining equitable distribution. In my view, the task is a bit more complicated than that.

I.

¶49. Generally, the valuation of a marital estate is as of a date coinciding with the dissolution of the marriage. This may be deemed the date of filing for divorce, the date of the hearing at which a divorce is granted or the date of the hearing at which property issues are determined depending upon the jurisdiction. *See, e.g., **Catalfumo v. Catalfumo**,* 704 So.2d 1095, 1098 (Fla. Dist. Ct. App. 1998)(holding trial court did not abuse its discretion in finding the date of filing the petition for dissolution as the valuation date for equitable distribution); ***Morgan v. Ackerman,*** 964 S.W.2d 865, 869 (Mo. Ct. App. 1998) (holding that valuation should occur on the date of the trial at which property issues are determined); ***Holbrook v. Holbrook***, 309 N.W.2d 343, 346 (Wis. Ct. App. 1981)(holding courts should utilize the date at which the divorce is granted); our case law suggests that, for valuation purposes, we have generally used a date that coincides with the end of the marriage. *Godwin v. Godwin*, 758 So.2d 384, 386 (Miss. 1999) (determination that order for separate maintenance indicated end of marriage). Courts have also recognized, however, that if the presumptive date is inequitable for all or some assets, the court, in the application of principles of equity may choose some other more appropriate date. ***Goldman v. Goldman***, 589 A.2d 1358, 1360 (N.J. Super. Ct. Chan. Div. 1991), *aff'd and remanded in part*, 646 A.2d 504 (N.J. Super. Ct. App. Div. 1994).

¶50. Bankruptcy of a business enterprise is among the complications which may cause a delay in valuation. Whatever the cause, however, it should be recognized that valuation as of a date significantly removed from the dissolution of the marriage creates additional concerns in determining the percentage of value to be assigned to the marital estate. *See generally,* Lynn Weddle Judkins*, The Road to Splitsville: How the Timing of Valuation During Marital Dissolution Leads to Costly Detours,* 15 J. Am. Acad. Matrim. Law. 465 (1998). In the case of a going concern, whether in or out of bankruptcy, a distinction must be

made between value gained by the continuing non-marital efforts of the spouse in possession and that gained by passive appreciation of business assets. *Bednar v. Bednar*, 474 A.2d 17, 18 (N.J. Super. Ct. App. Div. 1984) (When evaluating equitable distribution in light of accretion or enhancement in value, value must be analyzed in terms of whether the value was attributable to the personal industry of the party controlling the asset, apart from the non-possessory partner, or simply to fortuitous increase in value 'due merely to inflation or other economic factors.') (quoting *Mol v. Mol*, 370 A.2d 509 (N.J. Super. Ct. App. Div. 1977)).

¶51. In the instant case, the chancellor ordered that the estate be valued as of 1992, but he seems to have accepted a value based upon an adjustment to 1998 values, which did not necessarily reflect 1992 values. The majority suggests that the chancellor should have considered only a valuation as of the time that the bankruptcy ended. There was no testimony as to when the bankruptcy "ended." There was testimony that the reorganization plan had been confirmed by December 1997, at the time that a loan had been made, but the date of confirmation of the plan and closing of the Chapter 11 estate was not established. In my view, the chancellor must determine both the value at the time of dissolution of the marriage and the value at the time that the distribution is made. Assuming that the latter value is greater, the chancellor must then determine the percentage of the increase which is attributable to passive growth of marital assets as opposed to Mr. Heigle's post-marital efforts.

¶52. The chancellor made an effort to consider these factors. He observed that it would be inequitable to award Mrs. Simmons appreciation in value generated by the post-marital efforts of Mr. Heigle. On the other hand, he also expressly considered the ways in which the spouse in possession may benefit from the use of the marital assets. He then arrived at a figure of 40%, a downward departure from what he viewed as the presumptive 50% established in *Hemsley v. Hemsley,* 639 So.2d 909 (Miss. 1994) and its progeny, *e.g., Arthur v. Arthur,* 691 So.2d 997 (Miss. 1997); *Johnson v. Johnson,* 650 So.2d 1281 (Miss. 1995). He did so summarily, however, and as a policy matter, this Court requires a more detailed explanation. *Louk v. Louk*, 761 So.2d 878, 883 (Miss. 2000).

II.

¶53. Finally, I also find error in the failure of the chancellor to explain adequately the decision to accept the expert's explanation for disregarding debts owed by the partnership but collateralized by assets outside the partnership. The suggestion that one's debt may be disregarded because it is secured by the property of another is simply wrong. There may be a valid reason for disregarding this debt but it does not appear in the chancellor's opinion. Thus, the judgment should be reversed and this case remanded for this reason as well.

**McRAE, J., JOINS THIS OPINION. PRATHER, C.J., JOINS IN PART.**