DIAZ, J.,
for the Court:
¶ 1. Ida Hinton Brooks was granted a divorce from Frank Brooks on grounds of habitual cruel and inhuman treatment by the Yalobusha County Chancery Court on April 17, 1997. She now appeals to this Court the adequacy of the periodic alimony awarded by the chancellor as well his failure to treat as marital property the proceeds of contents insurance paid after a fire destroyed Frank Brooks’ home in which the parties lived. On cross-appeal, Mr. Brooks contends that the amount of alimony awarded was excessive. We find no error in the chancellor’s decision and affirm the orders of the court below.
FACTS
¶ 2. Ida Hinton Brooks and Frank Brooks were married on March 11, 1990 in Greenwood, Mississippi after a two-week courtship. Each had been married previously and had grown-children. They separated in September of 1996, moving to separate bedrooms in the same house.
¶ 3. Mrs. Brooks filed for divorce on grounds of habitual cruel and inhuman treatment in the Yalobusha County Chancery Court on November 27,1996. Brooks filed a counter-claim on the same grounds. The chancellor awarded Mrs. Brooks a divorce by decree dated April 17, 1997.
¶ 4. The chancellor made an equitable distribution of the property acquired by the parties during the marriage. Mrs. Brooks was- given the 1993 Cadillac, half of the furniture, fixtures and appliances, her clothing and personal possessions and all of her jewelry. The chancellor further awarded her $500 in periodic alimony and rehabilitative alimony in the amount of $1,000 for four months, followed by $500 a month for an additional twelve months. He also ordered Brooks to provide her with medical insurance coverage for one year.
¶ 5. At the time of the marriage, the couple lived in Brooks’ house in Water Valley. It was destroyed by fire in December, 1990. The Brooks lost everything, as did two daughters from previous marriages who were living with them at the time. Mr. Brooks’ home insurance policy paid $50,000 for the loss of the residence and an additional $20,000 for contents. Using these proceeds, they built a new house on the site, spending about $5,000 for new furniture. Brooks testified that the insurance money did not cover either the cost of rebuilding or the loss of the contents, which prior to his first wife’s death, had been estimated in excess of $110,000.
¶ 6. Fifty-three years old at the time of the divorce, Frank Brooks earned about $30,000 a year as president of the Yalobu-sha Gin and as a member of the board of trustees of a local bank. Variable income was derived from depreciation allowances, deferred compensation, profit-based bonuses and income on savings and investments, assets in excess of $700,000, which he and his first wife had made. He estimated his monthly living expenses at $2,894.50.
*303 ¶ 7. Mrs. Brooks, also in her early fifties, worked at a variety of jobs prior to and during her marriage to Brooks. Although she did not finish high school, the record indicates that she had acquired considerable computer, bookkeeping and other office skills over the years. At the time of these proceedings, however, she was not working. Mrs. Brooks testified that she was receiving treatment for high blood pressure, from which she suffered even prior to the marriage, and for “her nerves.” She has no apparent assets and estimated her monthly living, expenses at $2,971.74.
DISCUSSION
I. WHETHER THE CHANCELLOR ERRED IN FAILING TO HOLD THAT INSURANCE PROCEEDS FOR THE COUPLE’S COMBINED PRE-MARITAL PERSONAL PROPERTY BECAME MARITAL PROPERTY WHEN CO-MINGLED AND USED TO FUND CONSTRUCTION AND FURNISHING OF THE SECOND HOME, AND AS SUCH, BECAME SUBJECT TO EQUITABLE DISTRIBUTION.
¶ 8. The chancellor found that the parties had proven that only the furniture and cars were marital assets subject to equitable distribution. Since the house in which they lived during the marriage was built with insurance proceeds paid to Brooks when his house was destroyed by fire in December, 1990, the chancellor ruled that it was a separate non-marital asset. Therefore, he awarded Mrs. Brooks a 1998 Cadillac, half of the furniture, fixtures and appliances, her clothing and personal possessions and all of her jewelry. Mrs. Brooks now asserts that the chancellor also should have found that the $20,000 in contents insurance proceeds was a marital asset which she was entitled to share. She suggests that the parties’ premarital personal property “became marital property when insurance proceeds, which insured the combined personal property loss, were co-mingled to build the second house,” and seeks a more equitable distribution of those proceeds or a lien against the house.
¶ 9. The chancellor is authorized to make an equitable. distribution of all jointly acquired real and personal property. Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). In making such a division, the chancellor is not required to divide the property equally. Love v. Love, 687 So.2d 1229, 1231-82 (Miss.1997); Trovato v. Trovato, 649 So.2d 815, 817-18 (Miss.1995). Fairness is the “prevailing guide” in dividing marital property. Ferguson, 639 So.2d at 929. This Court will not disturb the chancellor’s findings unless they are manifestly wrong, clearly erroneous or an erroneous legal standard was employed. Watson v. Watson, 724 So.2d 350, 353 (¶ 16) (Miss.1998); Magee v. Magee, 661 So.2d 1117, 1122 (Miss.1995).
¶ 10. Nothing in the record suggests that the chancellor’s limit of marital property division to the cars and household goods was manifestly wrong, clearly erroneous or that an erroneous legal standard was applied. We further find no merit to Mrs. Brooks’ contention that the contents insurance proceeds paid to Brooks were converted into marital assets when they “were co-mingled to build the second house.” The house, which Brooks owned for years before his second marriage, was rebuilt with the property and contents insurance proceeds paid to him after the fire. He testified that the insurance money did not cover the cost of rebuilding. Brooks indicated that prior to her death, he and his first wife had itemized the contents of their home, reaching a value in excess of $110,000. Many of the household items Mrs. Brooks claims to have lost in the fire appear, from the record, to have been sold or given away to friends or relatives before the fire. Other items belonged to Mrs. Brooks’ mother, who moved in with another of her children prior to the fire. Further, the contents insurance covered not just the items lost by the parties but also their daughters’ *304 possessions. These factors considered, Mrs. Brooks received a fair distribution of the personal property acquired by the parties during their marriage.
¶ 11. Mrs. Brooks’ claim that the contents insurance proceeds were somehow co-mingled and converted into marital assets is not supported by the facts of the case or the law of marital property. Her reliance on Heigle v. Heigle, 654 So.2d 895 (Miss.1995) and Johnson v. Johnson, 650 So.2d 1281, 1286 (Miss.1994) is misplaced. In Heigle, the Mississippi Supreme Court reiterated its holding in Johnson that non-marital assets could be converted' into marital assets, subject to equitable distribution, when co-mingled with marital assets or used for familial purposes. Heigle, 654 So.2d at 897. JoAnn Heigle had placed $10,000 which she had inherited into an account which the parties used to purchase cattle and pay household expenses. The court found that “these funds lost their status as nonmarital property, were converted to marital property, and should have been treated as such.” Id. However, the court recognized that the $4,000 which Roger Heigle repaid his wife after the cattle were sold regained its non-marital status and was not subject to equitable distribution. In the case sub judice, Frank Brooks received a total of $70,000 in insurance proceeds after the residence titled in his name, and in which he had lived for many years before his second marriage, was destroyed by fire. He testified that it cost more than the insurance proceeds received to rebuild the house, which remained titled in his name. Mrs. Brooks’ contributions to building the house were limited to helping with the design, wallpapering a few rooms and nailing some sheet rock. The Brooks spent $5,000 on new furniture for the house; Mrs. Brooks valued those items at $25,000. Even assuming arguendo that the proceeds of the $20,000 contents policy were co-mingled and converted into marital assets to the extent they were used to pay for furniture and other household items for the benefit of various family members, that part of the money which was used to rebuild the house would have regained its non-marital status pursuant to Heigle. In receiving half of the furniture, household goods and all of hek personal possessions, Mrs. Brooks received a fair, if not generous, share of the contents insurance proceeds.
II. WHETHER THE CHANCELLOR’S AWARD OF PERIODIC ALIMONY WAS INADEQUATE
III. ON CROSS-APPEAL, WHETHER THE CHANCELLOR ERRED IN AWARDING BOTH PERIODIC AND REHABILITATIVE ALIMONY, OR IN THE ALTERNATIVE, WHETHER THE AWARD OF PERIODIC ALIMONY WAS EXCESSIVE
¶ 12. The chancellor awarded Mrs. Brooks $500 in periodic alimony and rehabilitative alimony in the amount of $1,000 for four months, followed by $500 a month for an additional twelve months. He further ordered Brooks, to provide her with medical insurance coverage for one year. Citing the disparities in their incomes, assets and obligations, the possibility that her “medical condition” might persist for more than a year and the standard of living to which she became accustomed during the marriage, Mrs. Brooks contends that the amount of alimony awarded was inadequate. On cross-appeal, Mr. Brooks asserts that the award is excessive given the duration of the marriage, the fact that much of his income is attributable to investment income from pre-marital assets and depreciation allowances, and that Mrs. Brooks’ testimony regarding her health and ability to work was inconsistent.
¶ 13. The award of alimony is within the discretion of the chancellor. Watson, 724 So.2d at 354 (¶ 18); McEachern v. McEachern, 605 So.2d 809, 815 (Miss.1992). “In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as- so oppressive, unjust or grossly inadequate as to evidence an abuse of dis *305 cretion.” Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). We find no such abuse of discretion in the case sub judice.
¶ 14. Periodic alimony arises from the duty of a husband to support his wife. Watson, 724 So.2d at 354 (¶ 17). To the extent he is able, the husband is expected to support his former wife in the manner to which she has become accustomed. Id.; Brennan v. Brennan, 638 So.2d 1320, 1324 (Miss.1994). However, we are mindful that “[a]limony is not a bounty to which appellant became entitled to receive indefinitely simply by reason of the fact that at one time she had been married to appellee.” Boren v. Windham, 425 So.2d 1353, 1355 (Miss.1983); Beacham v. Beacham, 383 So.2d 146 (Miss.1980).
¶ 15. In determining the awards of periodic and rehabilitative alimony, the chancellor made an on-the-record finding of the various factors enumerated in both Armstrong and Hammonds v. Hammonds, 597 So.2d 653 (Miss.1992). Noting that the parties were in their early fifties and had been married for between six-and-one-half and seven years, he emphasized that this was not the first marriage for either and that they had enjoyed a higher standard of living than is typical in Yalobu-sha County. When considering the equitable distribution of the marital property, he emphasized also that this was Mrs. Brooks’ fourth marriage, the parties had separated on three occasions and previously filed for divorce, and Frank Brooks’ savings from his first marriage had diminished during the course of this marriage. The chancellor farther noted that Mrs. Brooks was not presently working and that she was seeing a doctor for treatment of high blood pressure and depression.
CONCLUSIONS
¶ 16. Given the evidence in the record, we do not find that the chancellor abused his discretion in limiting the amount of alimony awarded to Mrs. Brooks. Moreover, considering Mr. Brooks’ cross-appeal, we do not find the amount of the award of periodic alimony or the combination of periodic and rehabilitative alimony to be excessive. There further is no merit to Mrs. Brooks’ assertion that the proceeds of Frank Brooks’ contents insurance policy should have been subject to equitable distribution. We therefore affirm the chancellor’s findings as to the equitable distribution of the parties’ marital property as well as the award of alimony to Mrs. Brooks.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF YALOBUSHA COUNTY IS AFFIRMED AS TO THE DIRECT APPEAL AND THE CROSS-APPEAL IS DENIED. COSTS ARE ASSESSED TO APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.