BARNES, J.,
for the Court:
¶ 1. Frank Segree III and Susan Segree were divorced on September 15, 2008. In the divorce action, Susan was awarded certain personal property, the exclusive use and possession of the marital home, child support, and periodic permanent alimony. Frank appeals, claiming that the chancellor erred in her distribution of the marital assets and her award of child support and periodic permanent alimony to Susan. We affirm the chancery court’s judgment ordering Frank to pay one daughter’s medical insurance and expenses and both daughters’ credit cards, and we affirm the award of attorney’s fees to Susan. However, as the chancellor’s award of marital assets was not supported by specific findings of fact, we reverse the chancellor’s judgment as it relates to the non-stipulated marital assets, alimony, and child support, and we remand the case for further proceedings in accordance with this opinion.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. Frank and Susan were married on June 4, 1983, in Franklin County, Florida. The couple moved to Vicksburg, Mississippi, where they lived for approximately sixteen years. Three children were born of the marriage: Robert Segree, who is legally emancipated, and twin daughters, Rebecca and Jacquelyn Segree, whose date of birth is June 6, 1989.[1] All three children still live in the marital home.
¶ 3. The couple had marital issues during their last years of marriage that resulted in both parties filing divorce complaints, which were later withdrawn. Finally, Frank told Susan that he was unhappy in the marriage, and the couple separated on June 12, 2007. Later that same month, Frank began dating another woman, Yolanda Davidson, and he occasionally stayed with Davidson on weekends when he was home from working in Memphis. Susan, who was forty-four years old at the time of the separation, is a high-school graduate, in good health, and works full time for Citi Financial. Frank, who was forty-one years old at the time of separation, has a G.E.D. and is a master pilot employed by the United States Corp of Engineers.
¶4. On July 17, 2007, Susan filed a complaint for divorce on the grounds of adultery and/or habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. A temporary order was entered by the chancery court on November 14, 2007, requiring Frank to pay all debts normally paid by him and $100 per month in child support. On June 16, *864 2008, Susan filed an amended complaint for divorce, with permission from the chancery court, which included a request for separate maintenance. A hearing on the divorce complaint was held on July 1, 2008.
¶5. At the hearing, the parties stipulated that Frank would receive two automobiles — a 2005 Mercury and a 2007 Dodge, a motorcycle, and a boat plus a motor. The parties also stipulated to the value of the marital home, the value of the couple’s retirement accounts, and that Susan would receive the household furnishings and lawnmower. The chancery court entered its final judgment on September 15, 2008, granting Susan a divorce on the ground of adultery. Frank was awarded the stipulated items of personal property, along with a travel trailer. Frank was also ordered to continue to pay Rebecca’s and Jacquelyn’s individual credit-card debt “in the amounts and manner he has previously provided,” and to pay $84,200 in outstanding debt on the marital home from his thrift savings plan (TSP). The judgment also awarded Susan: (1) permanent care and custody of her minor children, Rebecca and Jacquelyn, (2) ability to claim both minor children for tax purposes, (3) monthly child support of $825 for Rebecca, (4) use and ownership of the cemetery lots, (5) one-half of Frank’s retirement account (total value of $138,000), (6) her retirement account (total value of $20,868), (7) sole use and ownership of the marital home (valued at $100,000), (8) one-half of the remainder of Frank’s TSP, (9) $500 in monthly permanent periodic alimony (to commence upon cessation of child-support payments), and (10) $4,500 in attorney’s fees. Susan also received various personalty such as a late-model sedan and a Kubota tractor.
¶ 6. Susan and Frank each filed motions for reconsideration. Susan’s motion noted issues with federal compliance as it related to Frank’s TSP and complained that the court’s judgment failed to address medical insurance and payment of medical bills for the minor child or children. Frank’s motion argued that the chancery court’s division of the marital assets, and awards of child support, alimony, and attorney’s fees, were erroneous. On November 24, 2008, the chancery court, on its own motion, amended its judgment and ordered Frank to provide medical insurance and costs for Rebecca, awarded a portable generator to Frank, and awarded Susan ownership of certain tractor tires. On May 1, 2009, the chancellor entered an order overruling Frank’s and Susan’s motions for reconsideration. Frank timely appeals the denial of his motion.
¶ 7. We affirm the chancery court’s order requiring Frank to pay Rebecca’s medical insurance and expenses and both daughters’ credit-card debts, and we affirm the award of attorney’s fees to Susan. However, we find that the chancellor failed to provide the appropriate Ferguson test in the award of marital assets and reverse the judgment as it pertains to the equitable distribution of marital assets, the award of permanent periodic alimony, and the award of child support for Rebecca and remand for further proceedings consistent with this opinion.
STANDARD OF REVIEW
¶ 8. This Court “will not disturb a chancellor’s judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Benal v. Benal, 22 So.3d 369, 372 (¶4) (Miss.Ct.App.2009) (quoting Chapel v. Chapel, 876 So.2d 290, 292 (¶ 8) (Miss.2004)). If the chancellor’s findings are supported by substantial evidence, then we will affirm. Minter v. Minter, 29 So.3d 840, 850 (¶ 36) (Miss.Ct. App.2009) (citation omitted).
*865 I. Whether the chancery court erred in its allocation and division of marital assets and its award of permanent alimony and child support.
A. Marital Assets
¶ 9. Frank contends that the chancellor’s allocation of the marital assets, specifically the award of the marital home, was in error. When determining the equitable distribution of marital assets, a chancery court must review the “well-known factors established by Ferguson v. Ferguson, 689 So.2d 921, 928 (Miss.1994).” Smith v. Smith, 994 So.2d 882, 885 (¶ 9) (Miss.Ct.App.2008). Those factors are:
(1) contribution to the accumulation of property, (2) prior disposition of or distribution of assets, (3) market and emotional value of assets subject to distribution, (4) the value of non-marital assets, (5) taxes and other economic consequences of the proposed distribution, (6) the extent to which property division can eliminate the need for alimony, (7) the needs of the parties, and (8) any other equitable factors.
Smith, 994 So.2d at 885-86 (¶ 9). Here, although it does appear that the chancellor’s judgment awarded Susan a significantly greater portion of the marital assets, this is not necessarily an abuse of discretion. “[E]quitable distribution does not require equal distribution.” Morris v. Morris, 5 So.3d 476, 492 (¶39) (Miss.Ct. App.2008) (citing Bresnahan v. Bresnahan, 818 So.2d 1113, 1122 (¶11) (Miss.2002)).
¶ 10. However, “[t]he failure to consider all applicable Ferguson factors is error and mandates reversal.” Lowrey v. Lowrey, 25 So.3d 274, 286 (¶ 29) (Miss.2009). If the chancellor fails to provide “specific findings of fact and conclusions of law” in regard to the Ferguson factors, then the case should be reversed and remanded for such findings of fact. Johnson v. Johnson, 823 So.2d 1156, 1161 (¶ 12) (Miss.2002); see also Heigle v. Heigle, 771 So.2d 341, 348 (¶ 21) (Miss.2000) (reversed and remanded for further findings as “the chancellor made no conclusions of law to support the division of the marital estate.”); Baker v. Baker, 807 So.2d 476, 480 (¶ 13) (Miss.Ct.App.2001) (reversed and remanded as chancellor’s conclusory statements regarding contributions to the marriage, and the statement that he used the Ferguson factors, were not sufficient for the appellate court to understand factors considered in the chancellor’s determination).
¶ 11. In the chancellor’s final judgment, there are no findings of fact regarding the distribution of the non-stipulated marital assets. The court merely stated that it had “considered the testimony of witnesses, exhibits, and the law applicable thereto[.]” The chancellor does not even refer to Ferguson and provides no analysis or reasoning for the distribution and awards set forth in the judgment. A chancery court’s failure “to specifically address these issues on the record deprives an appellate court of the information necessary to undertake a meaningful review of the chancellor’s decision to determine whether an abuse of discretion has occurred that would require reversal.” Baker, 807 So.2d at 479 (¶ 12) (citing Kilpatrick v. Kilpatrick, 732 So.2d 876, 881 (¶ 19) (Miss.1999)).
¶ 12. Susan contends that both parties “stipulated as to all marital assets and their value”; therefore, a Ferguson analysis was not necessary. However, the parties merely stipulated as to majority of the personal property and the values of the marital home and retirement accounts. They did not stipulate as to the equitable distribution of the marital home, retirement accounts, or the tractor. The chan- *866 eery court still had a duty to examine the marital property at issue and make a factual determination, using Ferguson, on the equitable distribution of those assets. This she failed to do on the record. Accordingly, as it pertains to the distribution of the marital assets, we must reverse the chancellor’s judgment and remand the case for specific findings of fact under Ferguson.
B. Alimony
¶ 18. The chancery court awarded Susan $500 in monthly periodic permanent alimony, which was to commence only upon the cessation of child support to Rebecca upon her emancipation. “Generally, permanent alimony should be considered if one spouse is left with a deficit after the division of marital assets.” Elliott v. Elliott, 11 So.3d 784, 786 (¶8) (Miss.Ct.App.2009). In assessing the fairness of the alimony award, we must consider the overall result “rather than a separate assessment of the different issues.” Baker, 807 So.2d at 481 (¶ 17) (citing Turpin v. Turpin, 699 So.2d 560, 564-65 (¶ 16) (Miss. 1997)). “Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede.” Daniels v. Daniels, 950 So.2d 1044, 1047 (¶ 10) (Miss.Ct.App.2007) (quoting Lauro v. Lauro, 847 So.2d 843, 849 (¶ 13) (Miss.2003)). The purpose of “equitable distribution is to alleviate the need for alimony.” Elliott, 11 So.3d at 786 (¶ 8) (citing Ferguson, 639 So.2d at 929). Thus, when a case is remanded for further consideration of the division of marital assets, this Court must also remand on the issue of alimony as the “proper distribution of the parties’ assets and debts may affect the amount of alimony ultimately awarded[.]” Fitzgerald v. Fitzgerald, 914 So.2d 193, 198 (¶¶ 26-27) (Miss.Ct.App.2005) (citing Lauro, 847 So.2d at 850 (¶ 17)). Accordingly, we must reverse and remand on this issue as well.
¶ 14. Furthermore, the chancellor failed to make specific findings of facts under Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), in its award of periodic alimony. While this is not necessarily fatal to the consideration of an award of periodic alimony on appeal, we would recommend on remand that if the chancellor determines that periodic alimony is warranted, findings of fact should be provided to support the award. See Carroll v. Carroll, 976 So.2d 880, 888 (¶18) (Miss.Ct. App.2007) (“[w]hile an appellate court will affirm an award of alimony without a complete recitation on the record of an Armstrong analysis enunciating each factor, we must reverse if it is clear no such analysis occurred, or if the information in the record does not support a chancery court’s findings.”)
C. Child Support, Medical Insurance, Payment of Medical Bills and Credit Card Debt
¶ 15. Frank asserts that it was an abuse of discretion to order him to pay support for Rebecca, as she was the same age (nineteen years old), education level, and employment level as her sister, Jacquelyn, who was evidently considered by the chancellor to be emancipated as no child support was awarded on her behalf. Frank claims that Rebecca was employed full time and had her own car and bank account. Furthermore, neither daughter graduated from high school, and both daughters no longer attended school. There was also no testimony that either daughter was going to pursue a traditional college education.
¶ 16. “When reviewing child support awards, this Court examines the record to determine whether the chancellor’s award is supported by sufficient evidence.” Parker v. Miss. Dep’t. of Human Servs., *867 827 So.2d 18, 19 (¶ 3) (Miss.Ct.App.2002) (citing Powell v. Powell, 644 So.2d 269, 275 (Miss.1994)). It was undisputed that Jacquelyn had maintained a full-time job as a sales clerk for the previous year and one-half, although she was only making minimum wage. As to Rebecca’s employment status, the testimony reflects that Rebecca had two jobs: she had just started working at Klondyke’s the day prior to the hearing, making minimum wage, and she had part-time work on the weekends at the local skating rink. Susan claimed that Rebecca was not working full time at Klon-dyke’s. When questioned upon cross-examination, she stated:
A. [Rebecca] started yesterday at Klondyke’s.
Q. Full-time?
A. I don’t know that it’s full-time.
[[Image here]]
She told me that she was going to work when she was needed. I wouldn’t call that full-time.
Frank, however, refuted this testimony, claiming that Rebecca was working full time at Klondyke’s. He said that, to his knowledge, her work schedule was “six days a week from 10:30 to 6:30 every evening for fifty dollars a day.”
¶ 17. The chancellor made no conclusions or findings of fact to explain the reasoning for considering Jacquelyn emancipated and Rebecca a minor. Mississippi Code Annotated section 93-5-23 (Supp. 2006) states that the duty to support a child “terminates upon the emancipation of the child. The court may determine that emancipation has occurred pursuant to [sjection 93-11-65.”[2] Mississippi Code Annotated section 93-ll-65(8)(a) (Supp. 2006) also states that “[t]he duty of support of a child terminates upon the emancipation of the child.” Further, the pertinent part of subsection 8(b)(i) states that “the court may determine that emancipation has occurred and no other support obligation exists when the child ... [discontinues full-time enrollment in school having attained the age of eighteen (18) years, unless the child is disabled[.]” Miss.Code Ann. § 93 — 11—65(8)(b)(i) (Supp. 2006). Prior to the 2006 amendment to this statute, the section provided that emancipation has occurred when the child “[discontinues full-time enrollment in school and obtains full-time employment prior to attaining the age of twenty-one (21) years[.]” (Emphasis added). However, this prior version is not applicable to our present case as the final judgment was not entered until September 15, 2008. Thus, Frank is correct; the chancery court had the discretion to consider Rebecca emancipated, without having to consider whether she was employed full time. But, the chancellor also had the discretion to take into account that Rebecca had just starting work and was only earning minimum wage.
¶ 18. We are somewhat perplexed with this unique award of child support as it relates to the award of alimony. Susan’s alimony was to start only when the child support for Rebecca ceased, which makes us question whether a portion of the $825 monthly child support would be considered alimony. “Child support payments are for the benefit of the child, not the recipient parent.” Andres v. Andres, 22 So.3d 314, 319 (¶ 18) (Miss.Ct. App.2009) (quoting Strack v. Sticklin, 959 So.2d 1, 6 (¶ 15) (Miss.Ct.App.2006)). Yet, there is nothing in the judgment to explain *868 the chancery court’s reasoning for structuring the awards in this manner.
¶ 19. Also, this Court must consider child support collectively, along with equitable division of marital assets and the periodic alimony. The supreme court held in Lauro, 847 So.2d at 848-49 (¶ 13), that “[a]ll property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together.” Consequently, we reverse and remand on the issue of the child-support award.
IT 20. We find no error in the chancellor’s order for Frank to pay for Rebecca and Jacquelyn’s credit-card debt and medical expenses for Rebecca. At the hearing, upon cross-examination, Frank testified that he did not object to paying the girls’ medical insurance and expenses, stating:
Q. You intend to maintain the two girls on your medical insurance?
A. Absolutely.
Q. And you’ll pay the medical bills that are not covered? You need to answer aloud[.]
A. Yes.
Frank already had given Rebecca and Jacquelyn credit cards for their expenses since he worked out of town; the girls merely had to contact Frank and let him know approximately how much they had spent. This arrangement had been in place for approximately two years. Frank testified at the hearing that he did not mind continuing to help the girls with their expenses, stating:
Q. You’ve attributed two hundred and fifty dollars a month for both of your two girls or is that two fifty per child?
A. It’s whatever the girls need a month, Mr. Prewitt. I don’t care if it’s four thousand, if that’s what it takes.
Q. Okay. Then you acknowledge that your children still have current needs and need some kind of support or else you wouldn’t be doing it, Frank?
A. Correct. And I’ll also acknowledge that I want them to be full and gainfully employed and be productive citizens; correct.
Thus, we find that it was not an abuse of discretion for the chancellor to order Frank to pay for Rebecca’s medical expenses, medical insurance, and both daughter’s credit-card debt and affirm on this issue.
II. Whether the chancellor erred in awarding Susan attorney’s fees.
¶ 21. The chancellor ordered Frank to pay $4,500 to Susan for attorney’s fees. If the party requesting a divorce “establishes an inability to pay[,]” it is appropriate to award attorney’s fees. Stewart v. Stewart, 2 So.3d 770, 776 (¶ 18) (Miss.Ct.App.2009) (citing Gray v. Gray, 745 So.2d 234, 239 (¶ 26) (Miss.1999)). “As the issue of whether to award attorney’s fees in a divorce case is a discretionary matter left to the chancellor, this Court is ‘reluctant to disturb’ such a finding.” Id. (citing Young v. Young, 796 So.2d 264, 268 (¶ 11) (Miss.Ct.App.2001)).
¶ 22. This Court has stated that in cases where we reverse and remand “for the chancellor to make specific findings of fact and conclusions of law to support the equitable division of assets and the award of alimony, the Lauro decision also requires that we remand to allow the chancellor an opportunity to reconsider the award of attorney’s fees.” Gray v. Gray, 909 So.2d 108, 113 (¶ 22) (Miss.Ct.App.2005) (citing Lauro, 847 So.2d at 850 (¶ 18)). “On remand, the chancellor may *869 indeed revisit the award of attorney’s fees.” Id. However, although Frank claims that there was no finding by the chancellor that Susan was financially unable to pay, there was clear evidence presented that Susan was unable to pay the attorney’s fees and that there was a “disparity in the relative financial positions of the parties[.]” See Owen v. Owen, 22 So.3d 386, 393 (¶25) (Miss.Ct.App.2009) (citation omitted). Frank’s income was significantly greater than Susan’s, and he was the one who had left the marriage. Therefore, we find that Frank’s argument lacks merit and affirm the chancellor’s award of attorney’s fees to Susan.
III. Whether the Court should award attorney’s fees to Susan on appeal.
¶ 23. In her brief to this Court, Susan included a motion requesting the payment of her attorney’s fees upon appeal. Attorney’s fees on appeal are generally awarded “in the amount of one-half of what was awarded in the lower court.” Scurlock v. Purser, 985 So.2d 362, 365 (¶ 9) (Miss.Ct.App.2008) (quoting Makamson v. Makamson, 928 So.2d 218, 222 (¶ 18) (Miss.Ct.App.2006)). “But ultimately, the decision whether to award attorney’s fees on appeal is discretionary with this Court.” Howard v. Howard, 968 So.2d 961, 980 (¶ 53) (Miss.Ct.App.2007) (citing Riddick v. Riddick, 906 So.2d 813, 829 (¶ 52) (Miss.Ct. App.2004)).
¶ 24. We are also “precluded from considering the issue” if no authority is cited “for entitlement to attorney’s fees for defending an appeal.” Larue v. Larue, 969 So.2d 99, 112-13 (¶ 45) (Miss.Ct.App.2007) (citing Lauro, 847 So.2d at 851 (¶ 21)). Nor has Susan provided this Court evidence of the fees charged by her attorney or the work involved in this appeal. See Monroe v. Monroe, 745 So.2d 249, 253 (¶ 18) (Miss. 1999). Moreover, as we are reversing on the issues of equitable distribution of marital assets, alimony, and child support, we decline to award attorney’s fees to Susan for her appeal.
CONCLUSION
¶ 25. We affirm the chancery court’s judgment ordering Frank to pay Rebecca’s medical insurance and expenses and both daughters’ credit-card debt, and we affirm the award of attorney’s fees to Susan. However, as the chancellor failed to provide the appropriate findings of fact pertaining to the equitable distribution of the marital assets (particularly the award of the marital home), the award of permanent periodic alimony, and the award of child support for Rebecca, we must reverse the chancellor’s judgment and remand for proceedings in accordance with this opinion.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND AP-PELLEE.
KING, C.J., LEE, P.J., ISHEE AND ROBERTS, JJ., CONCUR. IRVING, GRIFFIS AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT. CARLTON, J., CONCURS IN RESULT ONLY. MYERS, P.J., DISSENTS.

. Since this action, the two daughters have become emancipated. See Miss.Code Ann. 93-1 l-65(8)(a)(i) (Supp.2009).

. This portion of statute was amended in 2006. Previously, the statute specifically listed the factors in determining whether emancipation had occurred. However, the current amended statute is the one applicable to this case.