# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-01014-COA

WALTER MARK THOMPSON                        APPELLANT

v.

JERRI THOMPSON                                APPELLEE

DATE OF JUDGMENT: 09/15/2022
TRIAL JUDGE: HON. DEBORAH J. GAMBRELL
COURT FROM WHICH APPEALED: LAMAR COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT: JOHN S. GRANT IV
BROOKE TRUSTY GRANT
ROBERT GERALD BARLOW III
ATTORNEY FOR APPELLEE: ORVIS A. SHIYOU JR.
NATURE OF THE CASE: CIVIL - DOMESTIC RELATIONS
DISPOSITION: REVERSED AND REMANDED - 01/30/2024
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Jerri Thompson was granted a divorce from Walter Mark Thompson (Mark) on the ground of habitual cruel and inhuman treatment. In the "Judgment of Divorce," the chancellor awarded Jerri custody of the parties' two minor children.

¶2. The chancellor later entered a separate "Judgment of Property Division," which Mark challenges in this appeal. In the judgment, the chancellor divided the parties' assets and ordered Mark to pay child support and one-half of the college expenses for the couple's nineteen-year-old.

¶3. On appeal, Mark asserts that because the chancellor divided the property without

performing any analysis pursuant to *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994),[1] the Judgment of Property Division should be reversed and remanded for a new trial on the property division and all other financial rulings. For the reasons discussed below, we agree. Accordingly, we reverse and remand the Judgment of Property Division, and because the chancellor who entered the Judgment of Property Division has retired, we instruct that on remand a new trial or hearing on the property division and all other financial issues be held by the new chancellor.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶4. Mark and Jerri married in 1989. They separated in May 2013 when Jerri left the marital home. Since the separation in May 2013, the parties have never reconciled. The parties have six children. The oldest four children are adults. The youngest two children, SCT and NGT, were born in June 2002, and in October 2004, respectively, and thus were minors during all or part of these proceedings.[2] In February 2020, Jerri filed a petition for divorce in the Lamar County Chancery Court alleging habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. Mark answered and denied Jerri was entitled to a divorce.

---

[1] For purposes of determining the equitable division of property, "*Ferguson* requires consideration of [certain] factors, or a finding of inapplicability," *Lowrey v. Lowrey*, 25 So. 3d 274, 286 (¶28) (Miss. 2009), as discussed later in this opinion.

[2] We use initials to protect the children's privacy. At the time of the divorce trial in December 2021, SCT was nineteen and a student at Nazareth College in Rochester, New York, pursuing a degree in art therapy. NGT was a homeschooled junior in high school.

¶5.     After a two-day trial in December 2021, the chancellor granted Jerri a divorce, finding she had proved habitual cruel and inhuman treatment.[3]  The chancellor's Judgment of Divorce contains findings of fact and conclusions of law on the divorce ground.  The Judgment of Divorce also contains an *Albright*[4] analysis regarding the child custody award.

¶6.     The chancellor's Judgment of Divorce does not address the division of the parties' assets, specifically providing:

> IT IS FURTHER ORDERED that the court cannot determine an equitable division of the parties' assets until such time that the court is provided with the following financial information, namely:
>
> > 1.) Retirement balances from any retirement/savings accounts of the parties as of January 2019.[5]
> >
> > 2.) Mortgage balances on the family home as of January 2019.
>
> The parties may provide this information to the Court within 30 days or secure a hearing date within said time to present the same to the court with argument.

¶7.     The chancery court's docket for this cause indicates that an April 13, 2022 trial date

---

[3] According to the appellant's brief, Mark maintains that the allegations raised by Jerri and an adult daughter at the divorce trial are "totally false," but he decided not to challenge the chancellor's grant of a divorce in this appeal.  Instead, he limits his appeal to challenging the chancellor's property division and other financial awards.

[4] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

[5] Mark had taught gifted children for eleven or twelve years at Brooklyn Attendance Center.  As of the divorce trial in December 2021, he worked as a security officer for Professional Security.  Mark also worked part-time for a Baptist Church in the music ministry.  Jerri was a "childcare manager" and also worked as a tutor at the time of the divorce trial.

3

for the property division issues was set by an agreed order. The record also indicates that the parties furnished the chancellor with over one thousand pages of financial documents for her review of the property issues.

¶8. The parties reconvened before the chancellor on April 13, 2022, and the record contains a transcript of the proceedings. The transcript begins with the chancellor issuing her findings and rulings distributing the property. She divided the property based on "exhibits and documentary evidence given by both parties to do an equitable distribution . . . ." The chancellor did not hear any testimony from the parties or any other witness on the property issues. Neither party made objections or presented arguments during the proceedings.

¶9. Regarding the marital home, the chancellor determined the "date of demarcation" for the accumulation of marital property was "January 2019," but she offered no basis for that designation. The chancellor averaged the two home appraisals furnished by the parties and then "equally divided" the equity in the marital home, with each party to receive $62,866.85. The chancellor noted, "It is the understanding of the Court that . . . Mr. Thompson is seeking to refinance the property to secure paying these sums to Ms. Thompson."

¶10. With respect to the parties' retirement accounts, the chancellor explained her method of allocating these assets: "The Court's position is that the person who earned the income [relating to the particular retirement account] is entitled to 60 percent, the spouse is entitled to 40 percent." The chancellor applied this sixty/forty allocation to all retirement savings and

4

benefits:

| Retirement Asset | Mark | Jerri |
| --- | --- | --- |
| Mark's PERS benefits ($1,000/month) | $600/month | $400/month |
| Mark's PERS annual cost of living adjustment (after Mark retains 25% for withholding) (amount varies per year) | 60% | 40% |
| Mark's retirement plan with the Southern Baptist Church ($69,221.87) | $41,533.12 | $27,688.75 |
| Jerri's Roth retirement plan ($3,246.55)[6] | $1,427.43 | $2,141.14 |

¶11.   Regarding SCT, although the chancellor observed that "[t]here is no obligation on the part of either parent to pay for college tuition for any child of the marriage," she ordered both parties to pay $6,500 every semester for the nineteen-year-old to pursue an art-therapy degree at Nazareth College in New York.  The chancellor made this award "based on the income of the parties and their financial ability to do so," but she did not provide any further details for the basis of her ruling.

¶12.   After issuing her ruling, the chancellor asked the parties, "All right.  Who is preparing the order?"  Jerri's counsel said he would do so and said, "I will submit it to [Mark's counsel] and let him look at it before we submit it to the Court."

¶13.   A follow-up discussion then took place among the chancellor, the parties, and the

---

[6] The written Judgment of Property Division finds this account is worth $3,568.57.

attorneys regarding refinancing the home and some personal property issues the chancellor had not addressed. The chancellor ruled on these items as they were brought to her attention. In ruling on various items of personal property, the chancellor did not perform a complete inventory, nor did she assign any value to the items she divided.

¶14. The *Ferguson* factors were not addressed at any time in the chancellor's bench ruling.

¶15. The chancellor also made no mention of a testamentary trust created by Jerri's father, who died in 2014. On this point, the record reflects that at the end of the December 2021 divorce trial, there was a brief discussion concerning the property distribution phase of the bifurcated proceedings. Specifically, Mark's counsel raised the testamentary trust issue. Jerri was one of the beneficiaries of this trust. Mark's counsel asked the chancellor to take judicial notice of the trust as part of the documentation the parties were instructed to give her in determining the equitable distribution of the parties' assets. The chancellor said, "The Court has been asked to go look at [Cause No.] 2014-pr-162, which is the Estate of Mansel Ray Hill. I have been asked to take judicial notice of the entire file, I will do so." When the parties reconvened before the chancellor on April 13, 2022, however, the chancellor did not mention the testamentary trust at all.[7]

---

[7] The record contains a copy of the trust, known as the "Mansell Ray Hill and Jackie Nell 'Lucky' Hill Family Trust." It provides that the trust owns a house (at 49 Hill Road, Hattiesburg, Mississippi) that Jerri claimed as her residence during the divorce litigation. The trust also provides that it owns a "property located at 7305 Martin Bluff Road, Gautier." Additionally, the trust provides that it owns "all of [Mr. Hill's] retirement benefits, [his] life insurance policy benefits, all vehicles, and all checking accounts [except one that was excluded]." The value of these assets is not clear from the record. Under the terms of the

¶16. The chancellor entered the written Judgment of Property Division on September 15, 2022. The judgment primarily tracks the chancellor's prior bench ruling.[8] The equity in the marital home was equally divided between Mark and Jerri. The judgment does not state who is given ownership and title, though it provides that "[t]he Defendant, Mark Thompson, has represented to this Court that he plans to refinance the home and will pay the Plaintiff $50,000.00 of her equity upon his refinancing the home. This should be completed within the next thirty (30) days." The judgment does not require Jerri to quitclaim or otherwise convey her interest to Mark, nor does it address responsibility for the mortgage, taxes, and insurance on the home.

¶17. Regarding other assets, the judgment does not mention the parties' vehicles or address the parties' checking and savings accounts. Nor does the judgment mention any tangible personal property owned by the parties.

¶18. The parties' retirement accounts and benefits are divided in the same way as the chancellor stated in her bench ruling, though the written judgment also orders Mark to pay "an additional" $12,866.85 from his retirement account to satisfy Jerri's interest in the

trust, Jerri is given a 3/10 share of the principal of the trust provided she was divorced or widowed within twenty years of the date of her father's death (in 2014). The trust also gives the trustee (Jerri's brother) discretion to distribute principal to Jerri before twenty years if he deems it appropriate, provided Jerri is divorced or widowed. The trust specifically provides that Mr. Hill "wanted to provide for Jerri Hill Thompson in the event she is widowed or divorced."

[8] Unless otherwise indicated, any issues that were not addressed in the Judgment of Property Division also were not addressed in the chancellor's bench ruling.

marital home because he could only pay $50,000 after refinancing the home.

¶19. The chancellor also ordered Mark to pay $537.59 per month in child support, consistent with a prior temporary order. Additionally, as she had done in her bench opinion, the chancellor ordered the parties to each pay $6,500 per semester for SCT's college tuition and expenses, stating that $4,500 of this figure was "calculated based upon the prevailing rate of public institutions in the state of Mississippi," and $2,000 was for "room and board." The judgment does not say who is responsible for covering the minor children's health insurance coverage, or who is entitled to claim the tax deductions for the minor children for federal and state income taxes.[9]

¶20. The chancellor does not address or apply the *Ferguson* factors or make any findings of fact or conclusions of law on the relevant factors in the Judgment of Property Division.

¶21. No post-trial motions were filed.

¶22. Mark appealed the Judgment of Property Division on October 3, 2022.

¶23. On July 19, 2023, Jerri filed a motion to dismiss the appeal, asserting that the Judgment of Property Division was not a final, appealable judgment. Mark responded,

---

[9] In the Judgment of Divorce, the chancellor stated, "[T]he parties agreed that [Mark] be responsible for providing medical insurance for the minor children and for any and all medical and dental care required for them should they no longer be covered by Medicaid." She also "ORDERED . . . that the children are currently insured under Medicaid" and found "[a]t the time that they are no longer eligible [for Medicaid], [Mark] shall provide health insurance and shall be responsible for one-half of all remaining medicals." But the chancellor did not revisit medical insurance coverage for the children when she issued the Judgment of Property Division, nor did she address which party could claim the children as dependents for tax purposes.

pointing out that the chancellor had addressed and ruled on the overall equitable property-division claim, even though Mark challenges on appeal certain aspects of that judgment that he asserts were errors and omissions on specific items of property. As such, according to Mark, the chancellor's judgment was final and appealable. On August 9, 2023, this Court passed Jerri's motion to dismiss the appeal for consideration with the merits of the appeal.

## STANDARD OF REVIEW

¶24. An appellate court's "scope of review in domestic relations matters is limited by [the] familiar substantial evidence/manifest error rule." *Heigle v. Heigle*, 771 So. 2d 341, 344 (¶7) (Miss. 2000). Therefore, "[t]his Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Id.* However, the appellate courts "[have] not hesitated to reverse chancellors who fail to apply the *Ferguson* factors and make the requisite findings of fact and conclusions of law as required by this Court." *Id.* at 348 (¶20).

## DISCUSSION

### I. Motion to Dismiss Appeal

¶25. Jerri asserts that the Court should dismiss this appeal for lack of a final, appealable judgment because "by [Mark's] own assertion," the chancellor did not address certain specific items of property. According to Jerri, this renders the Judgment of Property Division interlocutory in nature and, thus, nonfinal and nonappealable. M.R.C.P. 54(b) (providing that

9

an order or decision "however designated which adjudicates fewer than all of the claims . . . shall not terminate the action as to any of the claims . . . and . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties"). We disagree and find that the Judgment of Property Division is a final, appealable judgment.

¶26. The proceedings in this case were bifurcated. The chancellor issued a Judgment of Divorce after the divorce trial. The parties then furnished the chancellor with over a thousand pages of financial information and then reconvened before the chancellor on April 13, 2022. At that time, the chancellor addressed the overall equitable distribution of marital property, as set forth in the Judgment of Property Division.

¶27. That Mark challenges on appeal certain errors and omissions regarding particular issues or pieces of property does not render that judgment a nonfinal, interlocutory order. Our opinion in *Brown v. Brown*, 350 So. 3d 1169 (Miss. Ct. App. 2022), is instructive. In that case, this Court addressed the merits of property division issues raised on appeal where the chancellor made an "overall distribution of the marital property," but the appellant challenged the chancellor's failure to classify certain property as marital or nonmarital and value particular items of property in distributing the property. *Id.* at 1178 (¶28).

¶28. Had the Court been without appellate jurisdiction, it would have been required to dismiss the case even if the issue had not been raised by either party. *See, e.g.*, *Walters v. Walters*, 956 So. 2d 1050, 1053 (¶8) (Miss. Ct. App. 2007) ("Though the issue has not been

10

raised by the parties, this Court is required to note its own lack of jurisdiction."). Rather than dismissal, however, the Court in *Brown* considered the appellant's arguments and reversed "the chancery court's overall distribution of the marital property of the parties so that the chancery court can classify each item as either marital or separate, value each item, and then equitably divide the property between the parties using the *Ferguson* factors." *Brown*, 350 So. 3d at 1181 (¶42); *see Selman v. Selman*, 722 So. 2d 547, 553 (¶¶26-28) (Miss. 1998) (addressing the merits of appellant's challenge to the chancellor's equitable distribution of marital property despite the chancellor's failure to address "major items of marital property" and the "marital debts").

¶29.    Rule 54(b) requires that all "claims" be resolved before a judgment is considered final and appealable. M.R.C.P. 54(b). Here, the remaining "claim" after the Judgment of Divorce was rendered was Jerri's claim for an equitable division of the marital property. That "claim" was resolved by the Judgment of Property Division. The Judgment of Property Division was final and appealable. *See Brown*, 350 So. 3d at 1181 (¶42); *see also Selman*, 722 So. 2d at 549, 553 (¶¶1, 26-28); M.R.C.P. 54(b).[10] For these reasons, we find that Jerri's motion to

---

[10] Jerri also asserts that the lack of the word "final" in the Judgment of Property Division shows that the judgment is not appealable. But Mississippi Rule of Civil Procedure 58 makes clear that the word "final" need not be included in the judgment for it to be final and appealable. M.R.C.P. 58 (providing that "[e]very judgment shall be set forth on a separate document which bears the title of 'Judgment'" but that "a judgment which fully adjudicates the claim as to all parties and which has been entered as provided in M.R.C.P. 79(a) shall, in the absence of prejudice to a party, have the force and finality of a judgment even if it is not properly titled"). The generally recognized "substance over form" rule "applies in construing a judgment or order entered by the court. The character of a judgment

11

dismiss this appeal for lack of jurisdiction is without merit and denied.

## II.  Failure to Conduct a *Ferguson* Analysis

¶30.  Mark asserts that we must reverse and remand for a new trial on the property division issue because the chancellor failed to (1) classify the property as marital or separate, (2) value all of the property, and (3) equitably divide the property using the *Ferguson* factors.  In particular, Mark asserts that the chancellor manifestly erred by failing to conduct a *Ferguson* analysis in ruling on the property division at the April 13, 2022 proceeding or including a *Ferguson* analysis in the Judgment of Property Division.  We agree.

¶31.  In dividing marital property, "[c]hancellors must (1) classify the parties' assets and liabilities as marital or separate pursuant to *Hemsley*,[11] (2) determine the value of the property, and then (3) divide the marital property equitably, employing the *Ferguson* factors as guidelines in light of each parties' separate property." *Davis v. Davis*, 361 So. 3d 725, 734 (¶32) (Miss. Ct. App. 2023).  The "applicable *Ferguson* factors 'must be considered on the record in every case.'" *Williams v. Williams*, 303 So. 3d 824, 834 (¶38) (Miss. Ct. App. 2020) (quoting *Lowrey*, 25 So. 3d at 280 (¶7)).  The *Ferguson* factors include, but are not limited to, the following:

---

is to be determined from its substance and not from its caption." *Wilson v. Freeland*, 773 So. 2d 305, 308 (¶9) (Miss. 2000).  In this case, the substance of the Judgment of Property Division shows it is final and resolved all outstanding claims.  Accordingly, the lack of the word "final" in the caption does not change our decision on this issue.

[11] *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss. 1994).

12

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

> a. Direct or indirect economic contribution to the acquisition of the property;

> b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

> c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise[;]

3. The market value and the emotional value of the assets subject to distribution[;]

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and[]

8. Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928.

¶32. "The [chancellor's] failure to consider all applicable *Ferguson* factors is error and mandates reversal." *Lowrey*, 25 So. 3d at 286 (¶29); *accord Heigle*, 771 So. 2d at 348 (¶20) ("This Court has not hesitated to reverse chancellors who fail to apply the *Ferguson* factors and make the requisite findings of fact and conclusions of law as required by this Court.") (discussing cases); *Chipley v. Chipley*, 210 So. 3d 1030, 1031 (¶1) (Miss. Ct. App. 2015) ("In Mississippi, chancellors must consider the *Ferguson* factors in dividing marital assets and must make factual findings and conclusions of law on these factors. The failure to do so is manifest error, requiring reversal.").

¶33. Specifically, "chancellors must support their decisions [applying *Ferguson* in dividing marital property] with findings of fact and conclusions of law," *Vassar v. Vassar*, 228 So. 3d 367, 378 (¶40) (Miss. Ct. App. 2017), and a chancellor's failure to do so requires reversal and remand. *Lowrey*, 25 So. 3d at 281 (¶10) (reversing and remanding because "the appropriate *Ferguson* . . . test[] [was] not set out and applied"); *Johnson v. Johnson*, 823 So. 2d 1156, 1162 (¶14) (Miss. 2002) ("Because the chancellor failed to make specific findings of fact and conclusions of law on the record as required by *Ferguson* . . . , the trial court's division of property must be reversed[.]"); *Heigle*, 771 So. 2d at 348 (¶22) ("As a result of the chancellor's failure to apply the *Ferguson* factors properly, this Court has no choice but to reverse and remand this action to the trial court."); *Johnson v. Johnson*, 297 So. 3d 342, 347 (¶18) (Miss. Ct. App. 2020) (finding chancellor's failure to mention *Ferguson* factors to support her basis for dividing the marital estate was manifest error requiring reversal and

14

remand); *Chipley*, 210 So. 3d at 1033 (¶7) (reversing and remanding where "there [was] no record evidence any [*Ferguson*] factors were ever considered," observing that "[w]ithout these required findings and conclusions of law, we are unable to review the chancellor's property division," thus requiring that the chancellor's judgment be reversed and remanded "for the [new] chancellor to conduct a new trial on the property division"); *Segree v. Segree*, 46 So. 3d 861, 865-66 (¶¶11-12) (Miss. Ct. App. 2010) (reversing and remanding where the "chancellor [did] not even refer to *Ferguson* and provide[d] no analysis or reasoning for the distribution and awards set forth in the judgment").

¶34.    As an initial matter, we find that in several instances, the chancellor did not classify the parties' assets as marital or separate in the Judgment of Property Division or determine the value of certain property, as required under the first two steps a chancellor must take in dividing the parties' property. *See Davis*, 361 So. 3d at 734 (¶32). For example, the parties' vehicles are not mentioned in the judgment,[12] nor are the parties' checking and savings accounts mentioned or awarded to either party. The judgment contains no determination whether any tangible personal property was marital or separate, nor does it award any such property to either party. Also, nothing in the judgment indicates whether the chancellor considered Jerri's interest in her father's testamentary trust or how that interest could

---

[12] Referencing a prior "Agreed Temporary Order filed on June 22, 202[0]," the Judgment of Divorce provides that the parties "agreed that they each are entitled to the automobile in their possession and be responsible for insurance and tags on the same." The chancellor, however, did not value the vehicles nor award title or possession to either party in the Judgment of Property Division.

15

potentially affect the overall equitable division.[13]

¶35. Particularly significant, however, is that the chancellor wholly failed to comply with the third step in the property distribution process: the requirement that the chancellor conduct an equitable division of the marital property by considering the applicable *Ferguson* factors and making factual findings and conclusions of law on these factors. We find that the chancellor's failure to do so constitutes manifest, reversible error. The chancellor did not mention or consider any of the *Ferguson* factors in dividing the parties' property. Instead, the chancellor equally divided the equity in the marital home without analysis,[14] and she automatically allocated all retirement accounts and benefits as sixty percent to the spouse who owned the account and forty percent to the other spouse. In neither the chancellor's

---

[13] Additionally, we find that the chancellor erred when, despite the parties' nine-year separation, she made no finding in the final Judgment of Property Division declaring the date of demarcation for the accumulation of marital property. *See Ewing v. Ewing*, 203 So. 3d 707, 712 (¶¶14-15) (Miss. Ct. App. 2016) ("Though the chancellor implicitly held the date of demarcation as the date of the divorce, the chancellor erred when he failed to explicitly declare . . . the line of demarcation."). We recognize that the chancellor found in her bench ruling that the date of demarcation was "January 2019," but she offered no analysis on the issue. In any event, her statement in a bench ruling does not constitute a final decree on the issue. *See Orr v. Myers*, 223 Miss. 856, 862, 79 So. 2d 277, 278 (1955) ("The rule in this State is that every decree is in the breast of the court until entered, and a decree has no validity until written out and signed by the chancellor.").

[14] We also note that the chancellor did not award ownership, possession, or title to the marital home to either spouse or assign responsibility for the debt, taxes, and insurance. In the Judgment of Divorce, the chancellor ordered that "[Mark] shall have use and occupancy of the marital home and be responsible for all mortgage, insurance payments and tax obligations *until such time as the court makes the final distribution of all marital assets*" (emphasis added), but the final distribution of assets set forth in the Judgment of Property Division does not address these issues.

16

bench ruling nor in her written Judgment of Property Division is *Ferguson* ever mentioned, much less supported by findings of fact and conclusions of law as Mississippi law requires.

¶36. For these reasons, we must reverse the Judgment of Property Division and remand on the matter of property division. *See, e.g.*, *Lowrey*, 25 So. 3d at 286 (¶29); *Heigle*, 771 So. 2d at 348 (¶20); *Chipley*, 210 So. 3d at 1033 (¶7). Further, because the chancellor who entered the final Judgment of Property Division retired while this appeal was pending, we remand this case for a new trial or hearing on the property division before the new chancellor. *See Chipley*, 210 So. 3d at 1033 (¶7); *Reed v. Reed*, 141 So. 3d 450, 455 (¶18) (Miss. Ct. App. 2014) (recognizing that "remand[ing] the case for a new trial" is appropriate where the chancellor rendering the first judgment passed away "since the current chancellor should be afforded a first-hand account of all relevant facts and evidence").

### A. *Consent Judgment*

¶37. Jerri does not dispute that the chancellor failed to perform a *Ferguson* analysis but asserts that this analysis was not necessary because the Judgment of Property Division is an agreed, or consent, judgment. Specifically, Jerri asserts that when the parties reconvened before the chancellor on April 13, 2022, that meeting was a settlement conference; the transcript of that meeting was "a record . . . of what the agreement [regarding property division] was to be between the parties"; and the Judgment of Property Division was a "consent judgment" setting forth the parties' property settlement.

¶38. According to Jerri, because the judgment was an agreed order or consent judgment,

17

issues "such as [the chancellor's] failure to apply the *Ferguson* factors, determin[e] [a] line of demarcation, valu[e] [certain property, or] . . . classif[y] [whether property was] . . . marital or separate . . . are irrelevant." *See, e.g.*, *Bougard v. Bougard*, 991 So. 2d 646, 649-50 (¶19) (Miss. Ct. App. 2008) (recognizing that no discussion of *Ferguson* is necessary in the chancellor's order where "the division of the assets . . . [was] set by an agreement of the parties"). For the reasons discussed below, we are unpersuaded by Jerri's assertion that the Judgment of Property Division is an agreed or consent judgment so as to eliminate the requirement of a discussion of the applicable *Ferguson* factors in that final judgment.

¶39. First, the Judgment of Property Division, on its face, does not meet the requirements of a consent judgment. "A consent judgment is a final judgment, more like an agreed order, *which must be approved and signed by counsel for all parties* before being presented to the Chancellor for his signature." *McNeese v. McNeese*, 119 So. 3d 264, 271 n.2 (Miss. 2013) (emphasis added). Uniform Chancery Court Rule 5.03 provides:

> RULE 5.03 CONSENT JUDGMENTS *MUST BE APPROVED AND SIGNED BY BOTH COUNSEL*
>
> Every consent Judgment *must be approved and signed by counsel* for all parties to the suit who may be represented by counsel and interested in or affected thereby before being presented to the Chancellor for his signature. The Court may also require the parties to sign.

UCCR 5.03 (emphasis added).

¶40. Here, the Judgment of Property Division was signed by Jerri's counsel—it was not approved or signed by Mark's counsel and was therefore not a consent judgment as a matter

18

of law. *Id.* Indeed, even Jerri's counsel did not approve the judgment as to substance. His signature merely acknowledges he "READ, APPROVED and AGREED as to FORM[.]"

¶41. Second, the judgment's title does not indicate it is an "agreed" or "consent" judgment. It is merely entitled "Judgment of Property Division." And nowhere in the judgment is there any wording to the effect that it embodies the "settlement" or "agreement" of the parties.

¶42. Third, we find no reference to a "settlement" or "agreement" or any similar terms in the chancellor's bench ruling set forth in the transcript from the April 13, 2022 proceeding. Rather, the transcript reflects that throughout the proceeding, the chancellor uses phrases like "the Court finds," "the Court's position is," and "I want to impress upon the parties," which we find indicate it was the chancellor's ruling, not an agreement of the parties, that the chancellor was reading into the record.

¶43. Jerri asserts that when the chancellor asked the parties, "Who is preparing the order?" at the end of her bench ruling, this evidences that "the judgment was to be an agreed order." But, again, there is no indication in the chancellor's ruling that it embodied the agreement of the parties, rather than the chancellor's independent ruling based upon her review of the "exhibits and documentary evidence given by both parties to do an equitable distribution," as stated by the chancellor at the beginning of the proceeding and as also referenced in the Judgment of Property Division.

¶44. For these reasons, we find that the Judgment of Property Division was not a "consent judgment" or "agreement of a settlement." A *Ferguson* analysis was therefore required. The

19

chancellor's failure to apply *Ferguson* "is manifest error, requiring reversal" and remand to the chancery court. *Chipley*, 210 So. 3d at 1031 (¶1).

### B.  *Temporary Orders or Other Judgments*

¶45.    Jerri also asserts that "[a]ll of the marital debt, expenses, assets and property were disposed of, properly, through the orders and judgments of the trial court."  We reject Jerri's assertion because we find no support for it in the record or under Mississippi law.  Based on our review of the record, we find that it contains an "Agreed Temporary Order" filed June 22, 2020, that appears to dispose of some personal property and some of the parties' vehicles. This order in no way fully resolves the property issues, and even with respect to the property it addresses, the temporary order contains no classification of property as marital or separate, no valuation of any property, and no findings on the *Ferguson* factors.

¶46.    *After* entry of this temporary order, the chancellor entered her Judgment of Divorce on January 21, 2022, which specifically held open the "*equitable division of the parties' assets* until such time as the court is provided with" documents showing the balances of the retirement accounts and mortgage on the marital home. (Emphasis added).

¶47.    Following the April 13, 2022 proceeding, the chancellor entered her Judgment of Property Division that resolved the overall equitable division of property, which Mark challenges on appeal for the reasons discussed in this opinion.  The temporary order became moot and terminated when the chancellor later entered her Judgment of Property Division. *McIntosh v. McIntosh*, 977 So. 2d 1257, 1272 (¶55) (Miss. Ct. App. 2008).   More

20

importantly, nothing in the chancellor's temporary order changes the fact that the chancellor never conducted a *Ferguson* analysis, which is reversible error. *See, e.g.*, *Chipley*, 210 So. 3d at 1031 (¶1). For these reasons, we find that Jerri's assertion on this point is without merit.

### C. *Exhaustion of Post-Trial Remedies*

¶48. Lastly, Jerri asserts that Mark should have "exhaust[ed] his post-trial remedies" before appealing the Judgment of Property Division. Jerri's assertion is incorrect. Mississippi law plainly provides that "[a] party is not required to file a post-trial motion in chancery court in order to appeal the chancery court's judgment." *Aspired Custom Homes LLC v. Melton*, 72 So. 3d 540, 544 (¶11) (Miss. Ct. App. 2011).[15] In short, "[a] chancellor's judgment is final and appealable; there is no requirement for post-judgment motions." *White v. White*, 166 So. 3d 574, 584 n.3 (Miss. Ct. App. 2015). This principle applies here. We therefore find that Jerri's assertion to the contrary is without merit.

### III. Reversal and Remand of all Other Financial Awards, Including Child Support and College Tuition and Expenses

---

[15] Mississippi Rule of Civil Procedure 52 similarly provides:

When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised *regardless of whether the party raising the question has made in court an objection to such findings or has made filed a motion to amend them or a motion for judgment or a motion for a new trial*.

M.R.C.P. 52(b) (emphasis added).

21

¶49. Because we find that the chancellor's failure to apply *Ferguson* mandates reversal, we also find that the other financial awards in this case, such as the child support and college tuition and expenses awards, must likewise be reversed and remanded to allow the new chancellor to revisit these issues together with the equitable division of marital property. This is so because "[a]ll property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together." *Lauro v. Lauro*, 847 So. 2d 843, 848-49 (¶13) (Miss. 2003) (quoting *Ferguson*, 639 So. 2d at 929); *accord Segree*, 46 So. 3d at 868 (¶19) (recognizing that "this Court must consider child support collectively, along with equitable division of marital assets and the periodic alimony"). Accordingly, because we reverse the property division in this case, we also reverse and remand the other financial awards, including child support[16] and college tuition and expenses, to be readdressed on remand. *Segree*, 46 So. 3d at 868 (¶19); *see also Lauro*, 847 So. 2d at 848-49 (¶¶12-13); *Gambrell v. Gambrell*, 650 So. 2d 517, 521-22 (Miss. 1995).

¶50. **REVERSED AND REMANDED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

---

[16] Other financial issues should also be addressed such as responsibility for medical insurance and medical and dental care if any remaining minor children are no longer eligible for Medicaid. *See* footnote 9, *infra*.